## Quality Lumber & Millwork Company *v.* Andrus et al., Appellants.

Argued April 15, 1963. Before Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ. (Rhodes, P. J., absent).

*Earl F. Glock,* for appellants.

*Robert S. Glass,* for appellee.

Opinion by Wright, J., June 13, 1963:

On March 26, 1962, Quality Lumber & Millwork Company, referred to hereinafter as Quality, entered judgment against Mary E. Andrus on a bond secured by a mortgage covering premises at No. 118 Morrell Place in the City of Johnstown. An execution was issued on this judgment naming Frank Zupancic and Amelia Zupancic, his wife, as terre tenants. The Zupancics applied to the Court of Common Pleas of Cambria County for a rule to show cause why the execution should not be stayed and set aside, and the lien of the judgment released as to the premises in question. From

an order of the court below discharging this rule, the Zupancics have appealed. The facts are not in dispute and may be summarized as follows:

No. 118 Morrell Place was owned by Marie Sedlemeyer who occupied it together with her daughter, Mary E. Andrus. Mrs. Sedlemeyer died intestate on April 4, 1956, leaving Mrs. Andrus to survive her as sole heir. At the time of Mrs. Sedlemeyer's death, there were no liens against the premises. On April 20, 1956, letters of administration were granted to Mrs. Andrus by the Orphans' Court of Cambria County. Mrs. Andrus filed a bond with surety in amount of $5,500.00, and properly advertised the issuance of the letters of administration. An inventory and appraisement was filed by Mrs. Andrus listing the premises at a value of $5,500.00 as the sole asset of the estate. The inheritance tax has been paid. Mrs. Andrus continued to occupy the premises after her mother's death. On December 15, 1956, together with her husband (now deceased) Mrs. Andrus executed a $5,200.00 mortgage on the premises in favor of Quality. On April 25, 1957, upon petition of Mrs. Andrus, the Orphans' Court discharged and released the surety on her bond. On March 26, 1960, Mrs. Andrus as administratrix presented a petition alleging that she had accepted an offer of $6,950.00 for the premises, and requesting that she be excused from entering additional security. A decree was entered by the Orphans' Court to that effect. On March 30, 1960, Mrs. Andrus executed a deed as administratrix conveying the property to the Zupancics. Mrs. Andrus has not been discharged as administratrix. She has filed no account and there has been no adjudication or decree awarding distribution.

The controversy arises because of the improper conduct of a daughter who was both sole heir and administratrix. No question of jurisdiction has been raised, either of the Court of Common Pleas or of the Superior

Court. The issue involved is whether the deed of the administratrix conveys title to the decedent's real estate free of a mortgage lien against the decedent's heir made and recorded within one year after the death of the decedent and during the period of administration.[1] The answer to this question involves an analysis of the plan for administration of decedent's real estate under the Fiduciaries Act of April 18, 1949, P. L. 512, 20 P.S. 320.101 et seq. This matter would normally be dealt with in the Orphans' Court and would not be subject to appeal to this court, but it must nevertheless be considered in resolving the present issue.

The draftsmen of the Fiduciaries Act of 1949 intended to and did make a fundamental change in the manner of the administration of real estate in a decedent's estate. See introduction to draft of the Act, published by the Joint State Government Commission under date of December 15, 1948, which reiterated a similar statement in the introduction to Articles I-VII of the partial draft published under date of April 15, 1948. See Fiduciary Review, March 1952. Thorough consideration was given to questions of title to a decedent's real estate from the viewpoints of heirs, devisees, claimants and taxing authorities. See Fiduciary Review, August 1950. Careful thought was also given to the rights of bona fide purchasers and of persons who extended credit to heirs and devisees, both before and after decedent's death. See Fiduciary Review, October 1949. We will briefly mention the provisions of the Fiduciaries Act of 1949 which are here pertinent.

Section 104 (20 P.S. 320.104) reads as follows (italics supplied): "Legal title to all real estate of a decedent shall pass at his death to his heirs or devisees,

---

[1] We are not here confronted with a situation wherein real estate has been specifically devised or otherwise affected by the will of a decedent dying testate, nor are we concerned with the liability of the personal representative for the proceeds of the sale.

*subject, however, to all the powers granted to the personal representative by this act* and lawfully by the will and to all orders of the court".

Section 501 (20 P.S. 320.501) reads as follows: "A personal representative shall have the right to and shall take possession of, maintain and administer all the real and personal estate of the decedent, except real estate occupied by an heir or devisee . . . Nothing in this section shall affect the personal representative's power to sell real estate occupied by an heir or devisee".

Section 541 (20 P.S. 320.541) provides that "the personal representative may sell, at public or private sale . . . any real property not specifically devised. When the personal representative has been required to give bond, no proceeds of real estate shall be paid to him until the court has made an order excusing him from entering additional security or requiring additional security". This is the section under the authority of which the administratrix conveyed decedent's real estate to the appellants. The Commission's comment on the section is in part as follows: "As applied to real estate, this is a fundamental change from existing law. It seems advisable that the personal representative have the same right to sell real estate not specifically devised as he has to sell personal property".

Section 547 (20 P.S. 320.547) reads as follows (italics supplied): "If the personal representative has given such bond, if any, as shall be required in accordance with this act, any sale . . . by him . . . shall pass the full title of the decedent therein . . . *discharged from . . . all claims of distributees and of persons claiming in their right*".

It should perhaps be here noted that the powers of a personal representative, so long as he exists and has not been discharged, are not cut off by an appeal from

a decree of the register: Register of Wills Act of June 28, 1951, P. L. 638, Section 208(c), 20 P.S. 1840.208(c); nor by an appeal from an order or decree of the Orphans' Court: Orphans' Court Act of August 10, 1951, P. L. 1163, Section 772, 20 P.S. 2080.772; nor even by bad faith on the part of the personal representative if the persons dealing with him are not also guilty of bad faith: Fiduciaries Act of April 18, 1949, P. L. 512, Section 520, 20 P.S. 320.520.

Article VII of the statutes deals with accounting and distribution in decedents' estates. Section 701 (20 P.S. 320.701) requires every personal representative to file an account. Section 713 (20 P.S. 320.713) provides for the filing of a statement of proposed distribution. Section 714 (20 P.S. 320.714) provides for confirmation of the account and approval of the proposed distribution. Section 733 (20 P.S. 320.733) reads as follows: "A personal representative shall be relieved of liability with respect to all real and personal estate distributed in conformity with a decree of court or in accordance with rule of court after confirmation of an account". Section 736 (20 P.S. 320.736) reads as follows: "A certified copy of every adjudication or decree awarding real estate or an appropriate excerpt from either of them shall be recorded, at the expense of the estate, in the deed book in the office of the recorder of deeds of each county where the real estate so awarded lies, shall be indexed by the recorder in the grantor's index under the name of the decedent and in the grantee's index under the name of the distributee".

With the foregoing background we may approach the problem in the instant case. Quality granted credit to the sole heir of the decedent within nine months after the decedent's death. The title then in the heir was subject "to all the powers granted to the personal representative by this act". While the statute makes special provisions for marketability of title when there

is no personal representative in existence, see Section 615 (20 P.S. 320.615) and Section 756 (20 P.S. 320.-756), there is no provision without court order for the disposition of real estate without the joinder of a personal representative whose letters have not been revoked. It would therefore seem evident that Quality was negligent in granting credit to the heir in her individual capacity while letters of administration were in existence. In our opinion, the subsequent sale by the administratrix to the appellants passed good title free and clear of Quality's mortgage.

It should be noted that appellants could not properly have taken a deed from Mrs. Andrus in her individual capacity and have acquired full ownership to the property. Until a distribution had been made, the only proper source of the full title of the decedent was the administratrix. Any one checking the title was justified in searching against Mrs. Sedlemeyer alone, since record notice of any transfer out of her name would be shown only by some act of the personal representative or by an adjudication or decree properly indexed. Here pertinent is an excerpt from the discussion by James G. Schmidt, Esquire, a recognized authority on real estate law, appearing in the August 1950 issue of the Fiduciary Review: "Section 547 makes it clear that purchasers of decedents' real estate from a personal representative, who has given the bond required, if any, acquire the full title of the decedent . . . The purchaser who deals in good faith with the personal representative need give no concern . . . for claims of distributees or of persons claiming in their right . . . Occupancy of the real estate by the heir . . . is immaterial".

Before accepting title from the administratrix, appellants took the normal precautions which the Fiduciaries Act of 1949 required. It was not necessary for them to check the judgment and grantor indices with

regard to intervening action by the heirs. While there was only one heir in the instant case (who was also the administratrix), an exception would require that searches be made against all heirs regardless of number. This would largely nullify the advantages gained by the Fiduciaries Act of 1949 in the marketability of a decedent's real estate.

The order of the lower court is reversed, and the rule to show cause is made absolute.